**Mildred SEXTON, Executor of the Last Will of Bertha Birk Klein, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 63 C 2017.**

United States District Court
N. D. Illinois, E. D.
Feb. 10, 1965.

---

Gene C. Davis, Robert F. Hanley, John W. Castle, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Henry G. Zapruder, Department of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for defendant.

JULIUS J. HOFFMAN, District Judge.

This is an action for the recovery of an alleged overpayment of federal estate taxes. The decedent was a beneficiary under an existing trust known as the Jacob Birk Realty Agreement. The plaintiff executor complains that the government collected a deficiency based upon the inclusion in the gross estate of the value of the decedent's fractional share of the corpus of this trust as if the decedent were the outright owner. This assessment was improper, the plaintiff says, because the decedent's beneficial interest was limited by spendthrift and continuation provisions of the trust agreement which reduced its value to a conjectural figure approximating zero.

The government defends on several grounds. First it claims that the action is barred under principles of res judicata by the judgment entered against this plaintiff in a prior suit for refund of this tax. Alternatively, the government asserts that this prior decision constitutes a binding precedent, if not a formal bar, and that under its authority the tax was properly collected. Finally, the government answers that the plaintiff is barred by failure to make a timely claim for refund, and denies that the refund claim which served as the predicate for the prior suit can be extended to support the action here.

The case has been fully tried on its merits, but the factual dispute is confined largely to the valuation of the decedent's beneficial interest in the trust. There is no dispute that the plaintiff lost its previous suit to recover an asserted overpayment of this tax based on the inclusion of the decedent's interest in this same trust in her gross estate. The action was dismissed in this District Court, and the Court of Appeals affirmed in a decision rendered March 22, 1962, reported as Sexton v. United States, 300 F.2d 490 (7 Cir. 1962). To avoid the bar of this judgment, the plaintiff interprets this affirming decision as holding merely that the decedent's interest in the trust cannot be wholly excluded from the gross estate, but as recognizing specifically that only the value of the "equitable share," and not the full value of the fractional share of the corpus, should be included. This partial recognition of the claim for refund, it is said, creates a new cause of action not barred by the judgment and available as the ground for this new action.

 At best, however, the plaintiff's reading of the Court of Appeals opinion provides the executor with an additional theory of recovery, a ground not explicitly raised or argued in the court below. It is settled that the bar of a judgment extends to all the grounds of recovery which might have been advanced to support the cause of action, whether actually litigated or not. A plaintiff is not free to assert some of the grounds of recovery available to him in one suit, and to reserve other grounds for another suit and a later day. One day in court is enough. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876); Flood v. Besser Co., 324 F.2d 590, 591 (3 Cir. 1963); F. L. Mendez & Co. v. General Motors Corp., 161 F.2d 695 (7 Cir. 1947). It does not aid the plaintiff that this lesser theory was suggested for the first time by the opinion. A litigant is bound to bring forward all theories available to him, and second thoughts are not sufficient to open a case already closed. The place for the plaintiff to avail herself of this new theory was in the prior suit, as indeed she sought to do in her motion for rehearing. The affirmance of the final judgment, without remand for further proceedings, constitutes a bar to the cause of action and all its supporting theories, known or unknown.

The decision of the Court of Appeals for the Tenth Circuit in Martin v. Brodrick, 177 F.2d 886 (10 Cir. 1949), does not aid the plaintiff. There the first suit gave rise to a wholly new claim, in that court's view, for a refund of taxes based upon the deduction of the expenses of successfully prosecuting a prior claim for refund. The second claim there rested upon facts which had not yet occurred when the first suit was brought; here the plaintiff relies only on a legal theory not previously contemplated, with no new occurrence. Moreover, the view of the Tenth Circuit on even this distinguishable question is at odds with the authority in this Circuit, as the opinion in Martin v. Brodrick, supra, avows. See Van Dyke v. Kuhl, 171 F.2d 187 (7 Cir. 1948).

 Alternatively, the plaintiff argues that the prior judgment is not a bar because the parties stipulated, it is claimed, to reserve the problems of valuation of the decedent's interest for later resolution. The language of the stipulation does not support the contention, however. It provides:

"That in the event it is determined by the Court that plaintiff is entitled to a refund, defendant will request its Internal Revenue Service to make a computation of the amount due to plaintiff; plaintiff shall not be bound by said amount and if, at the expiration of 20 days following the entry of an order determining that a refund is due and owing plaintiff, the parties are unable to agree as the amount due, either of the parties may apply to the Court for an order determing the amount due plaintiff."

Here the Court of Appeals has affirmed a final dismissal of the plaintiff's suit for refund. The judgment imports that

the plaintiff is not "entitled to a refund", and the condition to the application of the stipulation, that it should be "determined by the Court" that a refund is due and owing, was never met. Even if the plaintiff's reading of one passage in the opinion were correct, it is the determination of the court, embodied in an order entered, which under the stipulation is controlling.

■ It follows that the plaintiff's claim is precluded by principles of res judicata regardless of the acceptability of her interpretation of the decision of the Court of Appeals. If the decision were open to interpretation at this stage, however, the claim still must fail. In the prior action, the litigants took polar positions. The government asserted that the trust had terminated on its original expiration date of March 2, 1940, and that a purported extension on January 18, 1940, was invalid since not authorized by the specific powers to amend and modify upon agreement of two-thirds of the beneficiaries and a majority of the trustees. In the government's view, the decedent would be regarded as having received a distribution of corpus at that time, and treated as having re-invested the funds in a new and independent trust of which she was a settlor. The plaintiff, at the other extreme, argued that the extension of 1940 was within the terms of the trust, with the result that the decedent had never received the corpus and therefore transferred no interest in it which could bring it within her gross estate. The Court of Appeals rejected both positions and took a middle ground. Contrary to the government's position, it held that the trust powers were sufficiently broad to embrace the power to alter the termination date of the trust and to extend its life. And contrary to the plaintiff's position the Court held that the decedent's fractional share of the corpus was properly includible in her gross estate nonetheless. The basis for this inclusion was the decedent's participation in the amendment of the trust in 1940 to postpone its termination. By this act she relinquished her existing right to receive her aliquot share of corpus in the imminent terminal distribution. Holding that relinquishment of a right is equivalent to a transfer of property for tax purposes, the court held that by giving up the "right to receive her share of the corpus" the decedent had transferred her "property interest in the corpus" or her "equitable share in the trust corpus." Thus even though as a matter of the trust law of the State of Illinois, the trust did not terminate but was validly extended, the very act of extension constituted a transfer which, with the reservation of an income interest, resulted in the same consequence of taxability.

It follows from this reading of the opinion that there is no occasion to value the interest of a beneficiary of a spendthrift trust, with an interest in the corpus contingent upon survivorship for a period subject to extension at the will of others. The evidence that such an interest is unmarketable on the securities market, has no loan value, and is not susceptible of actuarial valuation is therefore immaterial. The interest to be valued is rather the right relinquished, that is, the right to receive a designated share of the corpus upon the imminent termination of the trust. The fact that the amendment preceded the original termination date by less than three weeks eliminates any significant question of valuation. Since that transaction constituted a transfer of the decedent's share of the corpus, it is the value of that fractional share which is to be included in any event.

Since the interest was relinquished in 1940, under circumstances that imputed that share of the corpus to the decedent's estate, the subsequent extensions in 1950 and 1955 could not alter the situation and need not be considered. The government's additional defense of the lack of a timely claim for refund adds no independent support to these conclusions, and similarly need not be considered, since if the plaintiff's other arguments had merit, the court would be constrained to view the original claim for refund,

in the light of the subsequent proceedings, as a sufficient compliance.

Under the provisions of Rule 52 of the Federal Rules of Civil Procedure, this memorandum embodies and constitutes the Court's findings of fact and conclusions of law.

Judgment will be entered for defendant.