Ron M. Barnes and Shannon F. Davies, Oklahoma City, for appellant.

Lindil C. Fowler, Jr., Leslie W. Pepper, and Lu Willis, Oklahoma City, for appellees.

**SAMSON RESOURCES COMPANY, Appellant,**

v.

**CORPORATION COMMISSION OF the STATE OF OKLAHOMA; J.C. Watts, Jr., Commissioner; Bob Hopkins, Chairman; Bob Anthony, Vice Chairman, Appellees.**

No. 77402.

Court of Appeals of Oklahoma,
Division No. 1.

May 26, 1992.

## MEMORANDUM OPINION

GARRETT, Presiding Judge.

Appellant Samson Resources Company (Samson) appeals Order 355458 (the Order) of Appellee, Oklahoma Corporation Commission (the Commission), entered March 20, 1991. The Order adopted Rule 8–2(H) (the Rule), regarding horizontal well units. The Rule provides:

> No Order of the Commission authorizing a Horizontal Well Unit which includes any existing well or portion of any drilling and spacing unit producing from the same common source of supply will become effective until fifty percent (50%) of the ownership having a right to drill in each of such well and/or drilling and spacing unit consents in writing to the Horizontal Well Unit by filing such written consent with the Secretary of the

Commission in each such cause. The written consent to the Order shall not be a waiver of, nor commitment of, any rights of such owners in either the existing production or the proposed Horizontal Well Unit.

Samson contends the Rule is unconstitutional, in that it constitutes an impermissible exercise of the police power, fails to follow the legislative charge to the Commission to maximize production and protect correlative rights pursuant to 52 O.S.Supp. 1969 § 86.1 *et seq.*, and authorizes private parties to make decisions which are exclusively within the jurisdiction of the Commission.

The Commission contends that the Rule was promulgated pursuant to its statutory authority under 52 O.S.Supp.1990 § 87.1(f). It provides:

(f) *Notwithstanding any provision of this section to the contrary, the Corporation Commission shall have jurisdiction upon the filing of a proper application therefor, and upon notice given as provided in subsection (a) above, to establish spacing rules for horizontally drilled oil wells* whereby horizontally drilled oil wells may have well spacing units established of up to six hundred forty (640) acres plus tolerances and variances as allowed for gas wells pursuant to subsection C of this section. For purposes of this subsection a 'horizontally drilled oil well' shall mean an oil well drilled, completed or recompleted in a manner in which the horizontal component of the completion interval in the geological formation exceeds the vertical component thereof and which horizontal component extends a minimum of one hundred fifty (150) feet in the formation. *The Corporation Commission shall promulgate rules necessary for the proper administration of this subsection.* (Emphasis added).

An amicus curiae brief was filed in this appeal by the Oklahoma Independent Petroleum Association (OIPA). It takes the position of the Commission, i.e., that the promulgation and adoption of the Rule was not outside the scope of the Commission's authority under 52 O.S.Supp.1990 § 87.1(f), and that the Rule does not constitute an impermissible delegation of Legislative authority.

The section entitled "Summary of the Proposals and Comments", part 4.0 of the Order, provides in pertinent part:

Proposal No. 5 would amend OCCRP Rule 8–2 to establish criteria for the establishment and duration of a drilling and spacing unit established for a horizontal well.

Comments on Proposal No. 5 focused on paragraph (H). The issue was working interests onwers'consent (sic) to form a horizontal well unit over existing producing spacing units. The initially proposed Rule 8–2(H) required 50% of the working interest to consent to the filing of application.

At the start of the rulemaking, Samson Resources Company (Samson) filed written comments objecting to this provision. It suggested deletion of a consent requirement. In its opinion, a 'no consent provision' would correspond with existing spacing concepts.

Samson's arguments met with substantial and well reasoned opposition from other oil and gas companies. Samson's opponents argued the following: The Legislature gave the Commission a broad grant by virtue of use of the 'notwithstanding' in 52 O.S. Section 87.1(f). Such usage reflects a legislative intent to defer to agency expertise, especially in situations involving vested rights. Formation of a horizontal well unit over existing producing units affects vested rights in the following ways: It permits encroachment on existing production. It could reallocate production without regard to geologic advantage. Forced pooling actions could force prudent operators to elect between forfeiting rights and participation in a marginal or uneconomic horizontal drilling project. Furthermore, a 'no consent rule' will disrupt accounting and elections arising under joint operating agreements and forced pooling orders. It will not provide a fair and reasonable process for obtaining drilling commitments from the working interest owners, especially when the

working interest owners may not agree to going forward with costly horizontal drilling. As a group, Samson's opponents took the position that the Commission should adopt rules building on the foundation of compulsory enhanced recovery to provide at least an equitable election process for the formation of a horizontal spacing unit.

Most mineral lawyers concurred that an election process, if any, should model the process under the compulsory Enhanced Recovery Statute. They argued that due process guarantees mandate access to the forum, even though consent requirements may be necessary to obtain the remedy....

The above referenced enhanced recovery statute is found at 52 O.S.1991 § 287.5. It requires the written consent of 63% of the affected unit owners. The Commission argues that the Supreme Court rejected an argument identical to that of Samson's in *Palmer Oil Corporation v. Phillips Petroleum Co.*, 204 Okl. 543, 231 P.2d 997 (1951). In *Palmer*, the issue was the validity of the unitization act, 52 O.S.Supp.1945 §§ 286.1–286.7 (now repealed). It required 50% of the owners of a unit to join in the petition in order for the Commission to acquire jurisdiction. If at least 15% of the lessees protested the formation of the unit, the Commission had to vacate it. The *Palmer* Court held the consent requirement was not an unlawful delegation of legislative power to private parties and stated, "This type of legislation is not uncommon and has been applied in a variety of situations where community of interest obtains. Frequent examples are acts dealing with water rights and drainage." 231 P.2d at 1004 (citations omitted).

Samson argues that *Palmer* is distinguishable from the instant case. It contends that *Palmer* was concerned with the constitutionality of the Unitization Act, 52 O.S.Supp.1945 § 286.1, et seq., (repealed). It points out that the Legislature in the present Unitization Act, 52 O.S. § 287.5, expressly requires the Commission to find 63% agreement before entering an order under that Act, whereas 52 O.S. § 87.1(f) does not give the Commission the authority to require 50% agreement before entering an order. Without legislative authority in § 87.1(f) to require such consent, Samson contends the Commission exceeded its power in promulgating the Rule. We do not find *Palmer* distinguishable from the instant case. Subsection (f) of § 87.1 gives the Commission *"[n]otwithstanding any provision of this section to the contrary,* the ... jurisdiction ... to establish spacing rules for horizontally drilled oil wells ..." and to "promulgate rules necessary for the proper administration of this subsection". (Emphasis added).

Samson contends that this Court is not limited to the substantial evidence standard of review in this appeal. It contends that Art. IX, § 20, of the Oklahoma Constitution, gives this Court the authority to exercise its own independent judgment as to both the law and the facts because this appeal involves an asserted violation of its rights. However, we do not find an unconstitutional delegation of the Commission's authority to private parties, and we find the order is supported by substantial evidence. See *Samson Resources v. Oklahoma Corporation Commission*, 742 P.2d 1114 (Okl.1987). We hold the Commission did not improperly delegate its authority under Rule 8–2(H) to the owners of the right to drill to decide whether the horizontal well unit should be established. The order of the Commission, Number 355458, is AFFIRMED.

BAILEY and ADAMS, JJ., concur.